IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELEN DAWN RAINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-322-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The claimant Shelen Dawn Rains requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on August 31, 1968, and was forty years old at the time of the administrative hearing. (Tr. 38-39). She graduated high school, where she attended special education classes. (Tr. 117, 191). The claimant has worked as fast food worker, cashier checker, cafeteria counter attendant, and cafeteria cashier. (Tr. 67). She alleges that she has been unable to work since October 30, 2007, because of mental illness, arthritis, and a learning disability. (Tr. 113).

### Procedural History

The claimant applied on June 25, 2007 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael E. Finnie determined the claimant was not disabled in a written opinion dated December 22, 2009. (Tr. 21-29). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. The ALJ found that the claimant had the RFC to perform light work, *i. e.*, she could lift/carry ten pounds frequently and twenty pounds occasionally, and stand/walk/sit for six hours in an

eight-hour workday.  The ALJ further limited the claimant to performing simple, routine tasks.  (Tr. 24).  The ALJ then concluded that the claimant could return to her past relevant work as either a fast food worker or café cashier.  (Tr. 28)

### Review

The claimant contends that the ALJ erred by: (i) finding that the claimant did not satisfy the criteria of Listing 12.05C, (ii) failing to develop the record completely as to the claimant's adaptive functions, and (iii) failing to properly assess her credibility.  The Court finds that the ALJ *did* fail to properly determine whether the claimant satisfied the criteria of Listing 12.05C, and the decision of the Commissioner is therefore reversed.

The claimant was evaluated by state consultative examiner Randall Rattan, Ph.D. on September 20, 2007.  (Tr. 254-259).  During this appointment, Dr. Rattan administered the Wechsler Adult Intelligence Scale-III (WAIS-3), the results of which indicated that claimant had a verbal IQ of 69, a performance IQ of 76, and a full scale IQ of 70, and said results placed her in the borderline intellectual functioning range.  (Tr. 258).  Dr. Rattan stated that "[a] full diagnosis of Mild Mental Retardation was not made given the lack of formal assessments of adaptive function; however, such assessment may support this diagnosis."  (Tr. 258).  Dr. Rattan also completed a follow-up questionnaire as to the claimant on March 2, 2009.  (Tr. 341-344).  In response to questions, he indicated that he anticipated the claimant would have marked limitations with regard to her ability to maintain attention and/or focus for extended period, marked limitations with regard to her ability to perform activities within a schedule on a consistent basis, and

marked limitations with regard to her ability to complete a normal work day and work week without interruption from psychologically based symptoms. (Tr. 341-343). He also indicated that the claimant's mental impairments would exacerbate her physical impairments. (Tr. 344).

State reviewing physician Dr. Charles Lankford completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment. (Tr. 260-262, 345-357). Dr. Hartley indicated that the claimant's borderline intellectual functioning did not exactly match the criteria of Listing 12.05, and that she had moderate limitation in maintaining concentration, persistence, or pace, with mild limitations as to restrictions of daily living and difficulties in maintaining social functioning. (Tr. 349, 355). Dr. Lankford noted in the Mental RFC Assessment that the claimant was markedly limited in (i) the ability to understand and remember detailed instructions, and (ii) the ability to carry out detailed instructions. (Tr. 260). Additionally, he found that she was moderately limited in the abilities to (i) remember locations and work-like procedures; (ii) maintain attention and concentration for extended periods; (iii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iv) complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and (v) respond appropriately to changes in work settings. (Tr. 260-261).

Although the claimant bears the burden of proof at step three to establish that she

meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why claimant was not disabled at step three. *Id.* at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986). At the administrative hearing, claimant's counsel referred to the claimant's physical impairments and Dr. Rattan's assessment, and argued that the claimant would not be able to complete a normal workday. (Tr. 37). He further stated that he believed Listing 12.05C was at issue, in light of Dr. Rattan's statements as to the claimant's adaptive functioning. (Tr. 37). The ALJ determined at step three that the claimant's severe impairment of mental retardation did not meet section 12.04 of the Listing of Impairments, but made no mention or analysis as to whether the claimant met Listing 12.05C. (Tr. 23-24).

In order to satisfy section 12.05C, the claimant must first satisfy the diagnostic description included in the introductory paragraph which requires that the claimant possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05. This initial requirement is referred to as the "capsule

definition." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir.) [unpublished opinion]. As to the capsule definition applicable to the entirety of Listing 12.05, the record contains the claimant's high school transcripts. (Tr. 190-191). These records indicate that the claimant graduated high school ranked 144th out of 167 students, that she had a grade average of 79.94, and that the claimant was in remedial classes in at least some of the core classes including math and English. (Tr. 190-191). *See* 20 C.F.R. pt. 404, subpt. P, app. 1. Listing 12.05C (claimant must possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports *onset of the impairment* before age 22.")

In addition to satisfying the capsule definition of mental retardation, the claimant must also satisfy two additional prongs in order to meet the requirements of Listing 12.05C: "a valid verbal, performance, *or* full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1 [emphasis added]. Turning to the two prongs of section 12.05C, "'the purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects h[er] work.'" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997). With respect to the requirements specifically comprising Listing 12.05C, the claimant satisfies this first prong of the listing since both her verbal and full scale IQ scores were at or below 70, *e. g.*, the claimant scored a verbal IQ of 69 and a full

scale IQ of 70 on the WAIS-III. (Tr. 258).

The second requirement of Listing 12.05C is that the claimant must have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C. The Tenth Circuit has adopted the view of the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function." *Hinkle*, 132 F.3d at 1352. ("We conclude the analysis employed by the First and Eleventh Circuits is the better interpretation of what must be shown to satisfy the second prong of § 12.05C."), *citing Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984) and *Nieves v. Secretary of Health & Human Services*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two." *Hinkle*, 132 F.3d at 1352-53, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience.") [internal citations omitted]. Here, the ALJ determined that, aside from borderline intellectual functioning, the claimant had the severe impairments of morbid obesity, low back pain, an affective disorder, and a general anxiety disorder. (Tr. 23). *See Peck v. Barnhart*, 214 Fed. Appx. 730, 734 (10th Cir. 2006) ("Based on the ALJ's findings [that the claimant

had severe impairments that combined to significantly limit her ability to perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4.  Thus, contrary to the ALJ's failure to analyze the claimant's impairments under Listing 12.05C, the claimant *did* provide some evidence that her impairment existed before the age of 22, and *both* that she had an IQ score in the range of 60-70 *and* a "mental impairment imposing an additional and significant work-related limitation," either by her depression *or* by her inability to perform her past relevant work.  The ALJ's findings at step three with regard to Listing 12.05C are therefore not supported by substantial evidence, and the decision of the Commissioner is REVERSED and REMANDED to the ALJ for further analysis as outlined above.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma